May it please the Court, Jessica Thornhill on behalf of the United States. The issue before the Court is whether a well-educated man with a significant criminal history who is standing unrestrained on the side of a public road gave his consent voluntarily to Sgt. Dossie. Your problem, of course, is the clearly erroneous standard, isn't it? Yes, Your Honor, but we believe that the district court did clearly err in this in four key ways. First, finding that Sgt. Dossie's behavior was coercive. Second, in finding that not weighing the level of detention of Mr. Walker. Third, giving greater significance to the fact that he was not expressly told of his right not to consent and minimizing his intelligence and education in its ruling. Turning to the most egregious of the factors is the fact that Sgt. Dossie's behavior was not coercive. I invite this Court to review United States Exhibit 1, which was introduced at the suppression hearing, which shows the interaction between Sgt. Dossie and Mr. Walker, especially at minutes 15 to 16 point, which shows the time where Mr. Walker is asked to get out of his vehicle. He slowly takes his time getting out of the vehicle. He puts on his shoes. Sgt. Dossie stands there while he does that, patiently waiting for him to get out of the car, and then tells him the truth. He told him what had just transpired two minutes earlier with the driver of the vehicle, Mr. Glenn, who he had asked for consent to search, and he told him he could. He then volunteered his consent. What about one of the driver's licenses was retained, was it not, by the officer? Yes, Your Honor. The driver's license of the driver of the vehicle, who is Mr. Glenn, not Mr. Walker. But haven't we said that that has a coercive aspect to it in the sense that people don't feel particularly free to leave if they have to leave without their license? Your Honor, that would go to the detention element. The Court created the six-factor test. One of the factors is the voluntary nature of the person's custody, and whether they're free to go goes to that factor. And the cases that are cited for the premise that possession of a driver's license goes to that actually stand for that it is for a detention factor. The entire totality of the circumstances looks at whether somebody's will was overborne, i.e., whether they were coerced into giving their consent. And that's the cases that stand for that. How many officers were present? Your Honor, there were two officers present, and there were three suspects. Did one of the officers suggest or recommend to Dossie that he needed to get Walker's consent for the search? Your Honor, it was actually the opposite. Sergeant Dossie had a conversation with Corporal Woody directly outside the rental vehicle, and it's shown on the video at the 14-minute, 17-second point. They have a conversation right outside the vehicle in earshot of Mr. Walker, where Sergeant Dossie says, we need to talk to the renter of the vehicle, indicating Larry Walker. And the Corporal Woody replies, yes, we do. And, therefore, then within less than a minute, when Mr. Walker gets out of the vehicle, Sergeant Dossie begins by telling him what the truth, which is what the driver had said. And with that, Sergeant Dossie is immobilized. We're not talking about whether or not he told him the truth. We're talking about whether or not he got his consent, aren't we? Yes, Your Honor. We're not saying he lied about anything he said. The question is whether or not he got consent to do the search. Isn't that the question? Absolutely, Your Honor. All right. But the district court's ruling was based on the deception or trickery that he said that Sergeant Dossie tricked Mr. Walker into giving his consent. But the point of showing the truth is to show that there was no deception underway here and that Mr. Walker volunteered his consent before Sergeant Dossie could finish his statement. I mean, he testified in the record that he was interrupted, and the video shows that, that he says the driver said I could search, to quote, hey, I asked the driver if I could search the car, and he said, yeah. And then Larry Walker interjects, if he said search it, search it. It's a clear indication of voluntary consent there. There was no trickery. There wasn't anything to it. But, I mean, that's a decision for the district court to really make, though, isn't it, as to whether under the circumstances it was coercive or whether it was free and voluntarily given? Your Honor, I'm sorry. Could you repeat the question? Well, I'm saying it was for the district court to determine whether that conversation was coercive or voluntary, wasn't it? Your Honor, and the district court did make a decision, but they erred in making that decision based on this Court and the Supreme Court's precedent as to what is coercion. This Court and the Supreme Court in U.S. v. Drayton define coercion as an overwhelming show of force, intimidating movements, threats. There is nothing in the record that indicates anything of that nature took place. How long had the detention occurred? How long had the detention lasted at the time of this conversation? This conversation occurred at the approximate 15-minute point of the detention, where Mr. Walker had been sitting unrestrained in the back of his own rental car. What went on in that 15 minutes? Your Honor, there was some investigative things that were going on by Sergeant Dossie. He had been talking to the driver of the vehicle. He had taken him out of the car, which is where I start the minute point from. He took him out of the — asked him to get out of the vehicle to show him why he pulled him over, to show that there was the tinted license plate cover on the back of the car. They had a conversation, which leads to who — where did you get this from, the rental car, and that type of thing. And then he had to get the rental agreement to confirm that that was a rental car, which he got, and then that took place. So it was a short — Who had that rental agreement? The rental agreement was — At the time he allegedly got consent from Walker, who had the rental agreement? The — Sergeant Dossie had the rental agreement at that time. And he had the driver's license? Of Mr. Walker — of Mr. Glenn at that point. All right. But, Your Honor, this is not a case of coercion in any way, shape, or form. Additionally, the district court inflated the significance of the defendant's detention at that time. It seems to me, I mean, a district court could conclude that the nature of the statement of the police officer, the driver's given consent to this — he's given consent to search his car. I mean, without saying, I understand that you're the one that I need to get consent from, and a more conciliatory tone would have asked for consent instead of just kind of bullying his way into it. Or is that — you're saying that the tape shows that he didn't bully his way into it? Yes, Your Honor. And, again, I would encourage the Court to review the tape. And you'll see that the conversation and the tone in which the officer addresses all the parties is a conversational tone. There is no raising of his voice. There's no yelling. There's no anything of that nature. I mean, yes — What persuaded the — what persuaded the district court to find that it was involuntary? Your Honor, it appears in the ruling the fact that Sergeant Dawsey did not ask an express question was an attempt to deceive or trick Mr. Walker into giving his consent and the fact that they did not expressly tell him of his right not to consent, which, as the Supreme Court held in U.S. v. Drayton, it's not required that a person be expressly told of their right not to consent. And yet the district court made an express deal about the fact that he was not expressly told of it, which is in contravention of U.S. v. Drayton. Further, in that same fact — Didn't it challenge the detention as being excessively long under the circumstances? Your Honor, there was an initial in the motion to suppress did raise the question of whether the detention was unlawfully extended. The Court ruled that there was reasonable suspicion to extend the length of the stop. And we agreed that that existed at that time. What was the reasonable suspicion to extend the detention to 15 minutes over a legal — apparently legal covering over the license plate? Your Honor, there were many reasons that Sergeant Dawsey considered that gave him reasonable suspicion to extend the stop. The Court found, again, that the license plate cover, which was on a rental vehicle, which Sergeant Dawsey testified that he had never seen before, there were also a screwdriver found in the car. How was that explained? I'm sorry, Your Honor? Did the driver, did Walker or the driver or anyone explain why a shaded cover was over the license plate of a rental vehicle? Your Honor, the statement was made that it came that way by Mr. Walter Glenn, the driver of the vehicle. But Sergeant Dawsey, a 20-year veteran of the force, had never seen a rental car with a license plate cover on it. In addition to that, they had the screwdrivers in the car. They also gave inconsistent statements amongst each other. And they mispronounced the location they were supposedly just come from as Beaumont instead of Beaumont, where they had supposedly been visiting family over a weekend. They also talked about a trip that was over 48 hours just to come down for a long weekend to visit family. Also, the itinerary that they gave Sergeant Dawsey of Larry Walker said he flew from Florida to Connecticut to pick up a rental car and then drive back down to Texas to go to Beaumont to visit family, which is Beaumont. Uh-huh. Um, and then other statements that— They should have known how to pronounce Beaumont if they'd been there. Exactly, Your Honor. Is there some Nacogdoches place somewhere in Texas? Yes, Your Honor. How do you pronounce that? Was that close? I believe there's two. There's Nacogdoches in Louisiana and Nacogdoches in Texas. But I ought to know. If you had just visited family there, I would think you would know how to pronounce it. And that piqued the sergeant's interest as well. That there likely was criminal activity afoot there. Also, the vehicle was very messy on the interior of it. And they had just said they'd come from Beaumont visiting the family and were on their way back to Connecticut. The officer testified that that's indicative—it piqued his interest again because the car would likely have been cleaned out if you had stopped to visit family for a long weekend before you turn around and make an entire 24-hour trip back. So there were multiple elements that signified that there was reasonable suspicion. Present. And also that there was voluntary consent. In addition to the failure of the court to give the— I mean, how—the significance of screwdrivers to arouse suspicion of the—that a crime may be afoot? Your Honor, in—since viewing all of the elements in the totality of the circumstances, Sergeant Dawsey testified that seeing the screwdrivers in the rental vehicle and a license plate cover affixed to that rental vehicle, that he inferred that that was used to apply that, and therefore piqued his interest that there was likely criminal activity afoot as to the reasonable suspicion. Again, there was also clear evidence that he did voluntarily consent. In addition to the exaggerated significance that he didn't expressly tell him of that right, the district court ignored evidence that this court has found to be relevant  The United States introduced at the motion to suppress hearing the entire criminal history of the defendant, which spans 15 years and is found at record site 629 through 35. Fifteen years, six different arrests, and several convictions. Yet the district court made no indications about even considering that. Yet this court has found— Did the government offer any information that any one of these prior arrests or convictions involved a consent to search? Your Honor, that was not introduced in there. There was a traffic stop there where the individual was stopped in January of that same year in a different State that was introduced in addition to the arrests that were there. But this court— Are you making any argument that his previous criminal record would indicate some knowledge about the Fourth Amendment and his right to consent and so on? Yes, Your Honor. I believe this court has held that when there is significant criminal history, it shows an awareness of the consequences of providing consent. And therefore, like in U.S. v. Ponce, the court held that three prior convictions showed that the individual knew about his rights and knew of his right not to consent. Again, there's no express requirement that they're told that they have to be told that. Additionally, the motion to suppress that was filed by the defense actually concedes that his criminal history would weigh in favor of voluntary consent. But lastly, the fourth factor is that the district court minimized the importance of the education and intelligence factor. Is there any evidence in the record as to why someone would put a shaded covering over a license plate? Your Honor, the Sergeant Dossie testified that the likely reason for having that that he knows is to evade law enforcement. I mean, but did anybody offer a legitimate reason for shading a license plate? I mean, I can understand shading car windows and that sort of thing for different reasons, but a license plate? I just wondered what would be the explanation that it was served a purpose other than to obfuscate the license plate. Your Honor, no legitimate reason was provided, only Sergeant Dossie's. The court also minimized the importance of the education and intelligence factor in disregard of evidence the United States presented in there. It did not even mention it where we presented evidence that the defendant was a well-educated businessman with a college education. And the district court only marginally ---- Did he have a degree? No, Your Honor. He has college. He went to college. He has a 13th degree. Yes, Your Honor. College-educated, yes. And the district court did not consider that and only marginally favored the United States by saying he — the officer said he spoke well. Therefore, we ask this Court to reverse the decision of the lower court because they erred in several key ways. Thank you. Yes, thank you, Ms. Thornhill. And I guess you're on the correct side because it sort of slipped my mind that you lose a below. Usually the government's the winner below. Okay. We'll hear from Ms. Mosley, representing Ms. Walker. Good morning, Your Honors, and may it please the Court. My name is Kayla Mosley, and I represent Mr. Larry Walker, the appellee. Viewing the evidence in the light most favorable to Walker, which this Court is required to do, the district court did not clearly err when it employed the correct six-factor test, analyzed and assigned weight to those factors, and ultimately concluded that under the totality of circumstances, Walker did not voluntarily consent to a search of his rental vehicle. Within minutes of stopping Walker's vehicle for a minor traffic infraction, Sergeant Dossi decided to search for evidence of criminal activity. Instead of asking Walker, the authorized lessee who Sergeant Dossi recognized was the only party who could give consent. Sergeant Dossi. Can we look at that, at the tape of the film, and conclude on our own that there's no evidence of any coercion here, and overrule the district court's finding that there was involuntary consent? No, Your Honor. On appeal, this Court must view all the evidence in the light most favorable to Walker and refer to factual findings by the district court, especially when those factual findings are after the benefit of live testimony or video evidence. In this case, the record on the suppression hearing shows that the video was played while Sergeant Dossi was testifying on both direct and cross-examination. So the district court had the benefit of viewing this video in context, in conjunction with live testimony, and getting a whole picture of what happened. Okay. What is the nubbing of the district court's ruling that it was involuntary? I'm sorry, Your Honor, I didn't understand your question. Well, yeah, nubbing, nubbing, maybe. Sorry. What is the core of the district court's finding that the consent was involuntary? The core is three factors. The district court placed a lot of emphasis on the fact that Sergeant Dossi's tactics were coercive, and the district court — Okay, but what — I mean, what is coercive? What were his tactics that were coercive that supports that finding? Your Honor, there are several tactics. First and most importantly, it's important to remember that Sergeant Dossi never asked Walker for consent to search the vehicle, despite recognizing that Walker was the only individual in the car capable of giving such consent. Instead, he asked Glenn twice for consent to search the vehicle, and Glenn, as the government concedes, is an unauthorized driver and did not have authority to consent. Sergeant Dossi then told Walker — What did Glenn say? Did he just remain silent, or did he make any response to the first request for consent? Your Honor, Sergeant Dossi asked Glenn to search the car. Glenn said, yeah, you can search it. And Glenn followed up with yes. So Sergeant Dossi knows how to ask for consent. It's clear that he asked Glenn and clarified with Glenn that he could get consent to search the vehicle. However, in his interaction with Walker, he did not afford him the opportunity to refuse consent. Instead, he merely stated, the driver said I could search it, and he said, yeah, which implies its relevance. So although it's factually true, it is incredibly deceptive and misrepresentative because it implies to Walker — Walker heard Glenn give consent. Is that correct? No, Your Honor. There is absolutely no evidence in the record. He was in the car at that — Glenn was outside the car at that time. Is that correct? Yes, Your Honor. At that time, Glenn was standing in front of Sergeant Dossi's police cruiser. And Walker was inside the car, his car? Yes, Your Honor. He was inside with the door shut. And so there's absolutely no evidence from which this Court could view — or viewing it in any light could conclude that Walker heard Glenn consent. And so when Sergeant Dossi approached Walker and simply informed him that he already had consent to search the car, Walker is under the impression that Sergeant Dossi is asserting his authority to search and that any refusal on Walker's part would be futile. Are you — are you saying that officers have an obligation to inform someone that he has the right to refuse consent? No, Your Honor. That is not our position. That would be in contradiction to Supreme Court authority. However, this Court has found that it's an important factor to consider whether or not a defendant knew of his right to refuse consent. And in the totality of circumstances analysis, the fact that Sergeant Dossi told Walker he already had consent without informing him he had a right to refuse consent, without any evidence that Walker knew of his right to refuse consent, all while  paperwork, made this entire situation coercive. And so it would have been especially important for Sergeant Dossi to inform Walker of his right to consent here. All right. Had the backup police arrived at the time that he gave his consent — they had, because that's — the backup police had arrived at the time that the officer asked Walker for his consent because that was the advice that he received from the other officer. Is that right? It is correct, Your Honor, that backup officers had arrived. Corporal Woody was with Sergeant Dossi at the rental vehicle when Sergeant Dossi informed Walker that he had already gotten consent to search the vehicle. I also believe there was an additional officer off to the side and off camera. So, I mean, how many police were there that Walker could see on the scene at the time that he said the driver, Glenn, has given me consent to search your vehicle? Your Honor, there were two officers at the scene, Sergeant Dossi and Corporal Woody, that were directly in front of Walker. Additionally, at that time, Sergeant Dossi had already gotten Glenn and James, the other defendant in this case, out of the car and moved them back in front of the rental vehicle — or, excuse me, the police cruiser. So there were two police cruisers and two officers, only two officers? I believe there was a third officer on the scene, but he's not on camera. He appears when they search the vehicle. I'm not talking about on camera. There were three officers present on that scene, weren't there? Your Honor, I do know that there were. We don't know? There were eventually three officers on the scene, yes, but as far as what Walker could see at the time, there's no evidence that he could see the third officer. That's two different questions. I apologize, Your Honor. I'm just saying the question about which officers Walker could see at the time he had his conversation with Dossi is a different question from how many officers were present on the scene. Yes, Your Honor. Do you agree with me on that? Yes, Your Honor. And are you saying we don't know whether or not there were three on the scene, or are you saying there were three officers there? Your Honor, I'm — I mean, at some point we know backup showed up, and I thought the number increased to three. I could just be wrong. No, Your Honor. And if I am, I want you to tell me. No, Your Honor. At some point there are three officers on the scene. Because the video evidence doesn't show exactly when the third officer shows up, I am not confident in saying that there were three officers when Walker was — when consent was solicited from Walker. All right. So I know for sure that there were two officers directly in front of Walker at the time and that a third officer showed up as being called for backup. I'm just not comfortable saying exactly when that occurred. I apologize. You're very fair in your observations. Thank you very much. Thank you, Your Honor. Are you familiar with the United States v. Drayton? Yes, Your Honor. You agree that that's a pretty significant Supreme Court authority in this particular case? Your Honor, it is significant Supreme Court authority, but it is not applicable in terms of how the government is arguing it. We are not arguing that Sergeant Dossi had any obligation to tell Walker of his right to refuse consent. However, this Court has repeatedly affirmed that knowledge of the defendant's right to refuse consent is important in the six-factor totality of the circumstances analysis. Well, let me explain why I'm particularly bringing up the Drayton case. The government in its opening brief relied extensively on that case, cited it on three different pages. My antenna always goes up when one party relies heavily on a particular case and then the other party in its responding brief doesn't even mention the case. And it seems to me a little bit strange that you made no mention of Drayton. And when that happens, again, the reason my antenna goes up is it looks as though the party's trying to hide that authority rather than address it. I'm just wondering why you made no effort to even mention, much less respond to, Drayton in your brief. Well, Your Honor, we don't mention it because, again, we don't believe that it is applicable in this case. Well, then you should have told us in your brief that it's not applicable and tell us why. As an officer of the Court, you have a responsibility to help us decide the case, which means addressing authority, even adverse authority. And, again, it doesn't help your credibility, at least as far as I'm concerned, that you completely ignored that case. But as your opposing counsel, Ms. Thornhill, mentioned, Drayton, in terms of coerciveness, says, it's said in that particular case there was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no threat, no command, not even an authoritative tone of voice. Now, given all of the things that were mentioned there, I know that was a long string of things. Isn't that also true in this case, that none of those things was or were present at the scene in your case? Yes, Your Honor, that's true. But this Circuit has recognized that coercion does not have to be forceful. It doesn't have to be a threat of force. It can be implicit. In the United States v. Cavite, this Court recognized that coercion could be through deception or misrepresentation. Is that true here, though? That goes back to what Judge Smith is referring to, to my question. What is the core, what is the fundamental basis that the district court's concluding in the light of these circumstances that it was — that the consent was not voluntary? And I believe you said, based on the fact that he never asked him, is that basically the underpinning of the district court? If you remove that fact, then you have — if you remove the conclusion of the district court that the consent was involuntary because the defendant was not asked for consent, specifically, does that undermine the district court's conclusion that it was involuntary? No, Your Honor, because it's not so much that Sergeant Dawsey didn't explicitly ask, although that is a factor. It's the way in which he told Walker that he already had consent to search the vehicle. And so if you look at the totality of circumstances, at the time, Walker is outside of the vehicle. There are two officers around him. This is not a normal traffic stop because everyone has been ordered out of the vehicle. Sergeant Dawsey has all of the information that the vehicle occupants need in order to leave. And instead of asking for consent, Sergeant Dawsey states, I asked the driver if I could search it, and he said, yeah. That indicates that Sergeant Dawsey already has authority to consent to the search. And there's no evidence by which this court could conclude that Walker knew that he, as the lessee, had the authority to refuse that consent, despite the fact that Glenn had already given it. And so under all of these circumstances, this tactic was extremely coercive because it overborne Walker's will and his ability to refuse consent. Sergeant Dawsey asserted his authority, and Walker merely acquiesced to that. And in this case, this consent is not freely and voluntarily given. I mean, that sounds like a whole lot of weight is being put on a fact that is disputable. I mean, that is that mere fact that he says, your driver has already given consent to search the vehicle, and he says, well, if he said so, go ahead and do it. That makes the entire search or the consent involuntary. I mean, I thought the detention, I thought it seemed to me like the detention played a significant role in concluding that the consent was involuntary. That was one factor, Your Honor. Walker's custodial status was the reason. Okay. Argue that to me, how that affects the consent. Are you talking about the reasonable suspicion and the lack thereof for detention? The totality of the circumstances. In other words, what does he draw on from the totality of the circumstances to support the conclusion that it was not consensual? Well, the totality of the circumstances in this case include the way in which Sergeant Dossey spoke to Walker. However, it also includes the fact that Walker and his co-occupants were detained. They were not free to leave. Their custodial status was clearly involuntary. There's no evidence that Walker knew of his right to refuse consent. Additionally, in this case, Sergeant Dossey never ran the information that he received from Walker and Glenn, despite telling the occupants of the car that he was going to do so. And I think that implicitly played a role in the district court's analysis because we have an officer here who goes back to his police cruiser with information necessary to run computer checks, to check criminal histories, to check for outstanding warrants, and all of that, and he refuses to do so. But we're told that the district court concluded that the detention was not unnecessarily long. Is that correct? Your Honor, the district court concluded that the detention was prolonged, but they concluded it was not done so unlawfully because there was reasonable suspicion. The district court had an evidentiary hearing on the motion to suppress. Is that right? Yes, Your Honor. What evidence was presented at this evidentiary hearing? I just mean categorically. You had live witness testimony, you had a videotape. Tell me what you had in there. Yes, Your Honor. The main information presented was Sergeant Dossie's live testimony. Their videotape of the encounter was also presented. Photographs of the license plate cover taken by Sergeant Dossie after the vehicle was removed from the scene was presented. And tell me whether or not there was ever any finding that this tint was illegal, this tinted license plate cover, which I think you can walk into Walmart right now and there's a whole big rack of tinted license plate covers. Yes, Your Honor. Sergeant Dossie testified that any covering of the license plate that made it impossible to read when going by was illegal, and the district court credited this testimony that if Sergeant Dossie could not read the license plate, it would be illegal. So there's different degrees of tint that you could have, I would imagine. I don't want to get too deep into that, but I guess what I'm saying is some sun shading or some tint is probably legal, but if it gets to where it's opaque or something close to it, then you can't do that. And the ordinances may vary from state to state or municipality to municipality. Anyway, tell me what else he had at this hearing. Yes, Your Honor. If I may briefly follow up on that, unfortunately in this case, we can't assess the tint of the license plate cover because Sergeant Dossie did not confiscate it or retain it into evidence. Instead, he sent it back on the rental vehicle because he felt like since it was not the defendant's, he could not confiscate it. And so the one important piece of evidence not presented before the district court was this license plate. And while there were photographs, Sergeant Dossie admitted that those photographs were taken at a later time, at slightly different . . . Why someone would put a tinted covering on the license plate, and what purpose does it serve? Your Honor, some people like to put tinted license plate covers on their vehicles to protect the license plate. I imagine particularly for a rental car, they may want to make sure that the plate doesn't get damaged. However, there's no evidence as to why Walker or Glenn would have put it on there, because according to their testimony, it came like that. The rental vehicle came like that. And unfortunately, again, we can't determine how tinted this particular license plate was because it was not retained by Sergeant Dossie. Do you agree with the district court's conclusion that there was reasonable suspicion? No, Your Honor. We do not agree with the district court's conclusion that there was reasonable suspicion. Reviewing that decision de novo, even taking all evidence in the light most favorable to the government, there simply isn't sufficient evidence here that reasonable suspicion existed to prolong the stop. The only evidence relied on by the district court was the license plate cover on the rental vehicle, the fact that the defendants were traveling through a known drug corridor, and the screwdriver. But all of these factors are factors that innocent and law-abiding individuals would likely to be engaged in. And there's nothing that in the aggregate makes these factors suspicious. Again, a license plate cover is not per se illegal in Louisiana, and the ability of the district court to assess the degree of tint was unavailable in this case. There's nothing saying that individuals traveling for long distances in what Sergeant Dossie described as a lived-in vehicle wouldn't have a screwdriver out of necessity in case something happened. And additionally, Sergeant Dossie admitted that on holiday weekends, which is what this was, thousands of individuals are traveling on the road. And so by characterizing the travel itinerary and the lived-in nature of the rental vehicle as suspicious, he's essentially saying that anyone on a long road trip over a holiday weekend is suspicious, which is simply not the case. All of these factors are extremely benign, and in the aggregate, they simply can't rise to the level of reasonable suspicion. But you would, wouldn't you concede that there would be a basis to stop a car if you couldn't read the license plate? Yes, Your Honor. If Sergeant Dossie's testimony is credited, which it was, and he could not read the license plate, there would be a basis to stop. However, in this case, Sergeant Dossie didn't just stop the vehicle. He stopped it. He had a hunch that they were trafficking drugs. And instead of running any of the information to either confirm or dispel these facts, he sought the consent to search the vehicle. And in this case, Sergeant Dossie's tactics ended up being coercive, and he took advantage of Walker's involuntary custodial status and his lack of knowledge as to his right to refuse consent. And so under the totality of the circumstances here, not only did the district court not clearly err in finding that consent was not voluntary, but the district court did err in finding that there was reasonable suspicion to prevent this from happening in the first place. Accordingly, we ask this Court to either affirm the district court's ruling that there was not voluntarily consent in this case, or overturn the district court's ruling that there was reasonable suspicion and find that any consent, regardless of whether it was voluntary or not, did not dissipate the taint of this suspicion. Okay, Ms. Mosley. Thank you very much. Thank you.  Oh, I'm sorry. Thank you, Your Honors. I have a few brief points. First, the district court did clearly err here. And the factual findings that it made, the court did not make a credibility determination between several witnesses. The only person that testified was Sergeant Dossie, and the court made its decisions looking at the videotape that was presented. There wasn't Mr. Walker did not testify. Mr. Glenn did not testify. None of that existed. So it is clear that the district court made a mistake, and this Court has it within its authority to correct that mistake. So what you've touched on this, but specifically, in your view, what is the law as to whether we can review a video and make our own fact-finding or our own evaluation of the circumstances? What has the Supreme Court said about that? The Court has held that, Your Honor, in a clear error standard, it needs to be the evidence in light most favorable to the party that succeeded at that level. But if there is a mistake that was made and clear evidence of that, then this Court should make that correction and find that decision to be reversed. Well, I'm talking more specifically about our ability to look at a video taken at the scene. Are we able, then, to decide that there was clear error because as we look at the video, we would have decided differently? Your Honor, yes. If the evidence presented at the district court level, you're able to view that evidence and determine if there was a mistake made, and if so, to correct it. There's also the fact that there was no coercion here. And as Mr. Walker's counsel testified or spoke about, he didn't ask a question, and that's all the district court blamed it on. But the United States v. Jones has said there's no requirement to ask a question. And I would, again, ask the Court to view the video, and you'll see the interaction, which takes place at the 15-minute, 24-second point between the two. There is no — You know, the impression I got just reading the briefs is, I mean, is that the officer was kind of jacking these people around. In other words, he was being a little deceitful. He was, I mean, particularly, I mean, running the license plate or running the driver's license or whatever it was, he was running to see whether they had any kind of police record or anything, which he didn't do. Correct, Your Honor. But he testified that he was calling for backup, and he was doing that as a safety precaution. He's alone on the side of the road with three suspects, and he's looking at that point, had reasonable suspicion that he was going to investigate, and was going to. Based on the screwdriver. That's when he developed reasonable suspicion. Well, the screwdriver, Your Honor, the tinted license plate cover, the rental vehicle, the Beaumont, the inconsistent stories, the three of them, the confusing travel. He got all that in the first minute? In the first five minutes, yes, Your Honor. Oh, the first five minutes. Yes, Your Honor. In the first five minutes of that interaction that he talked to the three individuals — the two individuals. And that's where he got all of that information and then went back to his vehicle to call for backup. But he didn't ask a question that's not coercive. Further, there was no deception that existed. Again, the interaction between Sergeant Dawsey and Larry Walker, there's no indication that there was an implied acquiescence to authority. And as this Court has held, there has to be a bold declaration of authority. For example, in Bumper v. North Carolina, the Court said they had to say — Was he a uniformed police officer? Yes, Your Honor. Was he wearing a gun? Yes, Your Honor. Was he wearing a badge? Yes, Your Honor. A bold declaration of authority. Well, but this Court's not held that. And, in fact, Drayton specifically says that a police officer itself who happens to be carrying a weapon is not in itself a coercive element to it. He's an authority figure, though. You'd agree with that? Absolutely, Your Honor. All right. He is an authority figure. Additionally, the detention that took place was an individual who was unrestrained on the side of a road. Yes, he was detained. The United States would absolutely concede that. But the level in which he was detained, he was not handcuffed. He was not in custody. He wasn't in the back of a squad car. He was standing unrestrained on the side of the road. And, again, the videotape reflects this. Additionally, the reasonable suspicion, the officer had reasonable suspicion. As I mentioned, in the first five minutes, he obtained multiple things that showed that there was, in the totality of the circumstances, reasonable suspicion to extend the length of the stop. And they can't be viewed in a vacuum like Lucinda Walker's attorney. There's no question in my mind that if the district court had denied the motion to suppress, I would rule in favor of the government. But they reversed it, and that makes all the difference here, doesn't it? I mean, the district court is the one that — I mean, it's a close case, but the district court heard it and made a determination. And I have some question about our ability to. Your Honor, I see I'm out of time. May I briefly respond? No. If you want to respond to that, sure. Your Honor, the standard is clear error, but the errors that were committed here were egregious. There were four clear errors here, and especially the coercion of this officer. So we would ask this court to reverse the decision of the district court for the reasons we set forth in our brief and argued here today. Thank you. Okay. Thank you, Ms. Thornhill. We appreciate the good arguments. The arguments have been good here. But Ms. Mosley, we would like to really congratulate her because she's a law student and to say that you were thoroughly prepared and that your performance was competent and professional. Thank you, sir. Okay. We call the next case of the day, and that's —